**Slip Op. 11-**138

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| KINETIC INDUSTRIES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant. : <br> : | Court No.: 10-00325 |

**OPINION**

**Held:** Plaintiff's Motion for Judgment on the Agency Record is denied.

Dated: November 17, 2011

Dorsey & Whitney, LLP, (William E. Perry and Emily Lawson) for Kinetic Industries, Inc., Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Douglas Edelschick); Office of the Chief Counsel for Import Administration, United States Department of Commerce, Shana Hofstetter, Of Counsel, for the United States, Defendant.

**TSOUCALAS**, Senior Judge: This matter comes before the Court upon the Motion for Judgment on the Agency Record filed herein by Plaintiff, Kinetic Industries, Inc. ("Kinetic"). Kinetic argues that a decision by the Department of Commerce ("Commerce") not to initiate an administrative review upon Kinetic's request was an abuse of its discretion. Defendant, United States ("Government") opposes

Kinetic's Motion asserting that Commerce lawfully exercised its authority in denying Kinetic's request to undertake an administrative review.  For the reasons set forth below, the Court denies Kinetic's Motion and dismisses this action.

### BACKGROUND

On July 9, 2003, Commerce issued an antidumping duty order on saccharin from the People's Republic of China ("PRC").  See Notice of Antidumping Duty Order: Saccharin from the People's Republic of China, 68 Fed. Reg. 40906 (July 9, 2003) ("Final Order").  On July 1, 2010, Commerce notified interested parties of the opportunity to request an administrative review of the order.  See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 75 Fed. Reg. 38074 (July 1, 2010).  In response, Kinetic requested that Commerce conduct an administrative review of the Final Order as it related to certain saccharin imports from Taiwan.  See Letter from Dorsey & Whitney, LLP to the Secretary of Commerce, Re: Saccharin from the People's Republic of China: Request for Regular Review Investigation (July 27, 2010) ("Review Request"), Public Record ("PR") 2 at 2-4.  Kinetic alleged that Taiwanese companies were purchasing Chinese saccharin, repackaging it to indicate a Taiwanese origin, and exporting it to the United States without the knowledge of the Chinese sources, thereby evading the antidumping duty on saccharin from the PRC.  Id.

After asking for several clarifications on the nature of Kinetic's Review Request, Commerce issued its decision in the form of

a one-page letter on October 7, 2010. Commerce stated that it "shares Kinetic's concerns regarding attempts to evade payment of antidumping duties." See Letter from Wendy J. Frankel, Director, Office 8, Antidumping/Countervailing Duty Operations, Department of Commerce to Dorsey & Whitney, LLP, Re: Saccharin from the People's Republic of China: Request for Administrative Review (October 7, 2010) ("Final Decision"), PR 15. However, it further stated that it "does not conduct administrative reviews to investigate transshipment allegations" and said that it would forward a copy of Kinetic's Review Request to the United States Customs and Border Protection ("CBP"). Id. In support of its decision not to initiate the administrative review, Commerce relied solely on this court's decision in Globe Metallurgical Inc. v. United States, 34 CIT __, 722 F. Supp. 2d 1372 (2010), which sustained a decision by Commerce not to analyze standalone transshipment allegations during an administrative review.[1] Kinetic sought review in this Court on November 5, 2010, arguing that Commerce was without authority to decline its timely request for review, and that Commerce's established practice is to initiate administrative reviews to consider questions of origin.

---

[1] In this context, the term "standalone" refers to claims brought by a party that has sought only an administrative review of its transshipment allegations and not initiated other proceedings such as a circumvention inquiry. See Globe, 34 CIT at __, 722 F. Supp. 2d at 1381.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), which grants the Court authority to hear actions challenging Commerce's "administration and enforcement" of the antidumping duty laws.  See 28 U.S.C. § 1581(i)(4) (2006); see also Impact Steel Canada Corp. v. United States, 31 CIT 2065, 2069-70, 533 F. Supp. 2d 1298, 1301-02 (2007).

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2640(e), the Court shall review cases of this sort pursuant to 5 U.S.C. § 706 and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."  5 U.S.C. § 706(2)(A), (C) (2006).

**ANALYSIS**

19 U.S.C. § 1675(a) provides that, after the issuance of an antidumping order, annual notice shall be given of the opportunity to request a review of the order.  When such a request is received, Commerce "shall . . . review, and determine . . . the amount of any antidumping duty . . . ."  19 U.S.C. § 1675(a)(1)(B) (2006).  Commerce shall accomplish this by determining "the normal value and export price (or constructed export price) of each entry of the subject merchandise, and the dumping margin for each such entry."  19

U.S.C. § 1675(a)(2)(A)(i)-(ii) (2006).  Kinetic asserts that these provisions required Commerce to conduct an administrative review of the Taiwanese saccharine once a review was requested.  It relies on a straight forward interpretation of § 1675 - if a request is made, a review shall be initiated, and Commerce is without discretion to decide otherwise.  Whether Kinetic's interpretation is the correct one is considered under the guidelines set forth in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

The framework set forth in Chevron is well-established:

> Under Chevron, the court first asks whether Congress has directly spoken to the precise question at issue; if so, the inquiry ends and the Court must give effect to the unambiguously expressed intent of Congress.  If the statute is silent or ambiguous with respect to the issue, the court must ask whether Commerce's interpretation is based on a permissible construction of the statute.

Sahaviriya Steel Indus. Pub. Co. Ltd. v. United States, 649 F.3d 1371, 1375 (Fed. Cir. 2011) (quotations omitted).  Under this standard, "[s]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference . . . ."  Id. at 1374.  A reviewing court "must not substitute its own judgment for that of the agency even if the court might have preferred another interpretation and even if the agency's interpretation is not the only reasonable one."  Wheatland Tube Co. v. United States, 495 F.3d 1355, 1360-61 (Fed. Cir. 2007) (citation omitted).

Here, the Court concludes that Kinetic is incorrect in its assertion that § 1675 addresses the "precise question" at issue in

this case. First, as seen above, § 1675 expressly anticipates review of "subject merchandise." 19 U.S.C. § 1675(a)(2)(A)(i). The <u>Final Order</u> at issue here imposed an antidumping duty on saccharin from the PRC, not Taiwan. During the proceedings below, however, Kinetic stated its belief that Taiwanese companies were repackaging Chinese saccharin, and stated that these sales "should be attributed to the third party Taiwan companies" that were exporting the saccharin to the United States. <u>See</u> Letter from Dorsey & Whitney, LLP to the Secretary of Commerce, Re: Saccharin from the People's Republic of China: Request for Additional Information Regarding Annual Regular Review Investigation (August 24, 2010), PR 7 at 8-9. As noted by the Government, this is a concession by Kinetic that entries of subject Chinese saccharin were not at issue in its Review Request, but rather entries of saccharin from Taiwan, which are not subject to the antidumping duty order. Def.'s Opp'n to Pl.'s R. 56.1 Mot. at 10. It should be noted that this is not to say the Taiwanese exporters were acting in full compliance with United States law; indeed, all parties agree that they appear not to be. The issue is simply what procedure provides the best avenue to address any possible violations, and the Court concludes that § 1675 does not mandate that such questions be addressed by its own provisions.

That being the case, this matter becomes a <u>Chevron</u> step-two question, and the Court considers whether Commerce has adopted a permissibly reasonable interpretation of the relevant statutory

regime.  Commerce did not set forth its reasoning for not considering standalone transshipment allegations in administrative reviews in its Final Decision, referring instead to this court's decision in <u>Globe</u>.  In that decision, the court cited extensively Commerce's reasons for not employing the administrative review procedures in cases like these.  <u>See</u> <u>Globe</u>, 34 CIT at __, 722 F. Supp. 2d at 1375-78.  Therein, Commerce stated that "the statutory timeline for administrative reviews presents a barrier to investigating country-of-origin claims in administrative reviews", <u>id.</u> at 1376, while "the timeline for scope and circumvention inquiries may be extended and, accordingly, provide [Commerce] with the necessary flexibility to thoroughly investigate country-of-origin issues . . . ."  <u>Id.</u>  Commerce also discussed an earlier administrative review it had conducted involving transshipment issues and stated of that matter that the "inability to pursue [transshipment] allegations regarding parties who are not interested parties under the statute highlights the impracticality and ineffectiveness of attempting to investigate such claims through the administrative review process."  <u>Id.</u> at 1377.

Additionally, Commerce pointed to 19 U.S.C. § 1677j, which directs it to treat merchandise completed or assembled in a country other than the country subject to the antidumping order as subject merchandise.  <u>Id.</u> at 1378; <u>see also</u> 19 U.S.C. § 1677j(b) (2010).  This provision was important in <u>Globe</u> for the same reason it is relevant here; namely, there was no third-country assembly

or completion of subject merchandise. In Globe, as in this case, subject merchandise was allegedly repackaged, and then exported to the United States. Repackaging is insufficient to trigger the mandate of § 1677j. Finally, Commerce pointed to CBP's authority not only to investigate whether subject merchandise is being transshipped to avoid antidumping duties, but also to impose monetary penalties under 19 U.S.C. § 1592 where such conduct was undertaken with negligence or gross negligence, or by fraud. Globe, 34 CIT at __, 722 F. Supp. 2d at 1378.

After considering these reasons, the court in Globe concluded that Commerce had adopted a permissible interpretation of the statutes at issue. Id. at 1381. It stated:

> This is not to suggest that Commerce lacks any statutory authority whatsoever to address a standalone transshipment allegation like Globe's within an administrative review, but there is a difference between Commerce pursuing such an inquiry through the exercise of its gap-filling, policy-making discretion, and the court directing Commerce to do so by affirmative injunction. Globe has not persuaded the court that Commerce, in addition to its statutory duty to calculate dumping margins for known entries of subject merchandise within an administrative review, must also, within the same administrative review, investigate an importer with no known entries of subject merchandise, that has certified it has no such entries (confirmed by CPB data), and that may be fraudulently evading an antidumping order by mislabeling entries of subject merchandise. Suffice it to say, Commerce's handling of Globe's transshipment allegation represents a permissible construction of the antidumping statute to which the court must defer.

Id.

Kinetic argues that the policy articulated by Commerce in Globe, and sustained by this court, has not been followed because

subsequent to Globe, Commerce initiated an administrative review based upon transshipment allegations. See Pl.'s Mem. in Supp. of Mot. for J. at 23 (citing Certain Tissue Paper Products from the People's Republic of China: Notice of Preliminary Review Results of Antidumping Duty Administrative Review, 76 Fed. Reg. 19049 (April 6, 2011) ("Tissue Paper 2011 Review")).[2] If true, this is important because while courts must grant deference to Commerce's reasonable statutory interpretations, once Commerce has adopted a policy it must apply it consistently. See SFK USA, Inc. v. United States, 630 F.3d 1365, 1373 (Fed. Cir. 2011). In the Tissue Paper 2011 Review, Commerce was investigating allegations that subject Chinese tissue paper was being transshipped through Vietnam and entering the United States as Vietnamese merchandise. What Kinetic failed to state, however, was that the Tissue Paper 2011 Review did not present standalone transshipment allegations. The petitioners therein had also initiated a circumvention inquiry, see Certain Tissue Paper Products from the People's Republic of China: Notice of Initiation of Anti-circumvention Inquiry, 75 Fed. Reg. 17127 (April 15, 2010), and had requested the administrative review as a precaution in the event Commerce determined that the products at issue were, in fact, Chinese merchandise subject to an antidumping

---

[2] Kinetic also relies on administrative reviews of transshipment allegations that occurred prior to Globe. See Pl.'s Mem. at 12-17. However, even if those reviews were sufficiently similar to the current case, they are irrelevant here because Commerce acknowledged in the matter under review in Globe that it was articulating a new policy different than the one it had employed in the past. See Globe, 34 CIT at __, 722 F. Supp. 2d at 1377.

**Court No. 10-00325**                                                                                                         **Page 10**

duty.  See Def.'s Opp'n at 12.  These proceedings do not provide a basis for concluding that Commerce has not consistently applied the policy announced to the court in Globe.

In Globe, the Court considered the same statutes that are at issue in this case, under circumstances similar in all material respects, and concluded that Commerce had provided a sufficient basis for its decision not to address transshipment allegations during an administrative review.  Here, Commerce relied entirely on Globe, and there are no material circumstances distinguishing this case from Globe.  Accordingly, the Court concludes that Commerce's decision not to initiate an administrative review was not an abuse of its discretion.

Based on the foregoing, and upon Kinetic's motion, the response filed by the Government, and all other pleadings and papers filed herein, it is hereby

**ORDERED** that the Motion for Judgment on the Agency Record filed herein by Plaintiff is denied, and this matter is dismissed.

                                                               /s/Nicholas Tsoucalas
                                                             **Nicholas Tsoucalas**
                                                                 **Senior Judge**


Dated: November 17, 2011
       New York, New York

```
```

**Slip Op. 11-138**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| KINETIC INDUSTRIES, INC., : | |
| Plaintiff, : | |
| v. : | Court No.: 10-00325 |
| UNITED STATES, : | |
| Defendant. : | |

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein, now, in accordance with said decision, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record is denied; and it is further

**ORDERED** that this matter is dismissed.

/s/Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**

Dated: November 17, 2011
New York, New York